THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* LUIS RUIZ, Defendant-Appellee.

First District (2nd Division) No. 78-2048

Opinion filed November 13, 1979.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Joel A. Eisen-Stein, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Defendant Luis Ruiz was indicted for murder in having fired a rifle into a group of rival gang members, killing one of them. Pursuant to a hearing conducted under section 2—7 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 702—7), an order was entered permitting Ruiz, a juvenile at the time of the offense, to be prosecuted as an adult. Meanwhile, an accomplice, Mark King, was allowed to plead guilty to involuntary manslaughter in juvenile court proceedings. It was uncontroverted that King supplied the rifle and Ruiz fired the fatal shot. At the close of all the evidence at his bench trial, Ruiz moved for a directed verdict, arguing that the State should be estopped from proceeding on a charge of murder or voluntary manslaughter against him when it had accepted a plea of guilty from King for involuntary manslaughter, the issue of requisite intent thus having been adversely decided to the State's position. The trial court entered an order estopping the prosecution from proceeding against Ruiz on the charge of murder and purportedly dismissing the indictment, from which the State appeals. For the reasons hereinafter stated, we reverse and remand.

The issues raised on appeal include whether: (a) the appeal is barred by the double jeopardy clause; (b) there is any legal doctrine which would preclude the State from prosecuting Ruiz as an adult for murder when an accomplice was permitted to plead guilty as a juvenile to involuntary manslaughter; and (c) the trial court exceeded its authority by entering an order estopping the prosecution from proceeding on a charge of murder.

On the evening of July 13, 1976, defendant, King, Conception ("Crazy Joe") Gonzalez and Alex Espinosa were involved in the gang-related shooting death of Thomas Griebell on the north side of Chicago.

Gonzalez, Espinosa and Ruiz were members of a gang called the Spanish Gangsters. King was not; he was a member of the Insane Gangsters. King, testifying for the State at the Ruiz trial, stated that at 7 p.m. on the date of the shooting he was playing basketball in a schoolyard when he was approached by defendant. King told defendant that he had a disassembled .22-caliber rifle in his school bag, but that he had no bullets. After defendant said that he could get some, he departed, returned at 9:30 p.m., and told King he had the bullets and wanted to use the rifle to "hit" the Royals, a rival street gang. Gonzalez then drove defendant, King and Espinosa in his car to the vicinity of Fullerton and Southport Avenues. While traveling, Ruiz said that they were "going to do a hit on the Royals at Fullerton and Southport." When they arrived at an alley which was a short distance from a restaurant driveway where three Royals were standing, defendant, Espinosa and King crawled down the alley to a passageway across the street from the three Royals, who were then 40 or 50 feet away. King testified that the rifle was assembled first by Ruiz. Defendant pointed the rifle at the Royals and pulled the trigger, but the rifle didn't fire. The rifle was taken down twice more and reassembled first by King and then by Gonzalez. On the fourth attempt by defendant, who "begged" for "one more chance for a shot," the rifle did fire and defendant immediately exclaimed "Boya, I got one of the suckers in the head."

Defendant's signed, court reporter statement given to an assistant state's attorney on July 21, 1976, was admitted in evidence as part of the State's case-in-chief. This account of the facts is in agreement with King's testimony except that defendant claimed it was King's idea to "make a hit on the Royals" because they had shot a friend of defendant's; and defendant asserted he made only one attempt to fire the rifle, which fired at that time.

Chicago Police Officer Dennis Rizzo testified for the State. He responded to a call of a man shot at a restaurant at 1401 W. Fullerton on July 13, 1976, at about 10:30 p.m. He found the body of Thomas Griebell situated on the restaurant driveway and directly across the street from the center of the gangway from which defendant had fired the fatal shot. There were no obstructions between the center of the gangway and the location of Griebell's body, which, he observed, had sustained a bullet hole in the rear of the skull.

Defendant's testimony in court generally followed the version contained in his statement. Now, however, Ruiz claimed that King supplied both the rifle and bullets, and King had tried to fire the rifle before he did, but it did not fire. Defendant further testified that before he shot the gun he did not aim it at anyone, but just pointed it above the heads of the crowd. He had been bragging "[t]hat I was going to get me

somebody \* \* \* the Royals \* \* \* because they had shot my partner in the nose and shot me once in the arm. \* \* \* I was going to shoot one." He thereafter asserted that he did not intend to shoot anyone. On cross-examination defendant testified that he went to the scene with King because he wanted to shoot someone. When he asked Gonzalez to drive them to Fullerton and Southport, it was because he knew the Royals "hung out" there. Two or three of those gathered on the restaurant driveway were wearing their Royal sweaters. The boy who was shot was not wearing a sweater.

At the close of the prosecution's case-in-chief and again at the close of all the evidence, defendant moved for a directed verdict. Among the arguments made by the defense in support of the motions on September 29, 1978, was that "\* \* \* the fundamental fairness doctrine and due process of law would preclude the State from going ahead any further [*sic*] in this lawsuit before Your Honor under the charge of murder or under the charge of voluntary manslaughter." No ruling was made upon the motions and the case was continued until November 16, 1978, without a finding of either guilt or innocence. On the latter date, defendant orally requested a ruling which would "preclude the state from going any further in this lawsuit," and submitted a document entitled, "Memorandum In Support Of Luis Ruiz's Position That The State Is Estopped From Proceeding On The Charge of Murder." Defendant again argued it was fundamentally unfair, a violation of due process and of equal protection to charge the principal with murder yet allow the accomplice to plead guilty to involuntary manslaughter. Central to this argument was the alleged inconsistent treatment accorded Ruiz when compared with King in regard to the element of intent. Defendant did not address the issue of factual guilt or innocence of King in his argument, except to suggest that the finding of involuntary manslaughter as to King, with the concomitant absence of intent on his part, collaterally estopped the State from proceeding on any charge against Ruiz which required intent as an element of the crime.

The State argued that no constitutional violations had been identified and that the accountability statute, section 5—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 5—3) contemplated conviction by accountability although the principal may not have been prosecuted or convicted, or was convicted of a different offense or degree of offense, so that the State should not be estopped from its prosecution of Ruiz under the law.

The trial judge reviewed the pretrial proceedings, including his ruling upon the admissibility of defendant's confession and the discussion of the possible acceptance of a guilty plea from defendant if given 5 to 15 years, which defendant had accepted and the State had refused. The

judge then analyzed the evidence and indicated that he accepted defendant's constitutional arguments, saying:

"I'm going to enter an order estopping the prosecution from proceeding to prosecute Luis Ruiz on this murder charge in order that my decision might be reviewed by a court of review without prejudicing the State's position. * * * The effect of my ruling is to dismiss the murder charges and that will be the order that I will enter, and the state has the option, * * * to appeal the decision, without any jeopardy being imposed upon the state's position during the pendency of the appeal."

The half-sheet reflects only an estoppel, rather than a dismissal order. Defendant did not object to this relief nor did he attempt to clarify the nature of the relief which he had requested.

The State appeals from the estoppel and putative dismissal order. Defendant claims that this appeal is barred by the double jeopardy clause because he merely requested a directed verdict and the trial court instead entered a dismissal, thus rendering the dismissal *sua sponte* by the court. The State maintains that the trial court did not dismiss the indictment *sua sponte*, but rather entered the order at defendant's request and with his consent.

■■■ That jeopardy has attached in this case is not in dispute, since the order in question was entered at the close of all the evidence. (*Serfass v. United States* (1975), 420 U.S. 377, 43 L. Ed. 2d 265, 95 S. Ct. 1055.) In determining the validity of a double jeopardy claim, it is necessary to examine the particular facts and circumstances of each case, for under certain circumstances an appeal and a second trial may not be barred. (*Illinois v. Somerville* (1973), 410 U.S. 458, 464, 35 L. Ed. 2d 425, 431, 93 S. Ct. 1066, 1070; *People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527, 535, 387 N.E.2d 325.) Once jeopardy has attached and the trial court, "acting without defendant's consent, aborts the proceeding, the defendant has been deprived of his 'valued right to have his trial completed by a particular tribunal.' [Citation.]" (*United States v. Jorn* (1971), 400 U.S. 470, 484, 27 L. Ed. 2d 543, 556, 91 S. Ct. 547, 557), and the double jeopardy clause will bar retrial. A defendant, "* * * by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant." (*United States v. Scott* (1978), 437 U.S. 82, 98-99, 57 L. Ed. 2d 65, 79, 98 S. Ct. 2187, 2197-98.) The precise double jeopardy issue presented in this case is whether the defendant here sought or consented to the trial court's ruling.

The State relies primarily on the *Scott* decision, where Scott moved for a dismissal of the indictment both before and during trial based on preindictment delay. The prosecution sought to appeal the dismissal and defendant asserted double jeopardy as a bar. The supreme court held double jeopardy was not applicable because defendant had deliberately sought termination of the case on grounds factually unrelated to his guilt or innocence. In the case before us, defendant claims, he moved for a directed verdict, yet a dismissal was granted. As we have noted, however, the order entered on the half sheet refers only to estoppel, not dismissal. The effect that may have been inferred by the trial judge from his order cannot control the classification of the action. (*United States v. Scott*, 437 U.S. 82, 96-97, 57 L. Ed. 2d 65, 77-78, 98 S. Ct. 2187, 2196-97; *People v. Deems* (1979), 74 Ill. App. 3d 543, 548, 392 N.E.2d 1118.) The order in question does not dismiss the murder charge; it merely terminated further proceedings pending the appeal.

■ The State contends that despite its labelling as a motion for a directed verdict, defendant's motion was not addressed to factual guilt or innocence, as is appropriate in such a motion; rather, the argument consisted of claims that fundamental fairness and equal protection should preclude the State from proceeding. The State notes, secondly, that defendant submitted to the trial court a document entitled "Memorandum In Support Of Luis Ruiz's Position That The State Is Estopped From Proceeding On The Charge Of Murder" which addressed estoppel or dismissal, not factual innocence. Thirdly, the State asserts, the court specifically said before entering its order, "I'm going to forego making any finding on the issue of innocence or guilt." The State concludes that defendant therefore consented to the termination of the case by the trial court because the defendant's requested relief was ambiguous in light of the arguments made and the document submitted and made no attempt to clarify the ambiguous request for relief throughout the course of the hearing. We agree. Defendant's reliance on *People v. Wiley* (1979), 71 Ill. App. 3d 641, 389 N.E.2d 1283, is misplaced. In *Wiley*, the State sought an overnight recess in order to bring in two witnesses and the trial judge, without any motion by defendant, dismissed the indictment. The appellate court, citing *Jorn*, found that double jeopardy barred a retrial because the trial court *sua sponte* aborted the proceeding. In the case before us, however, the trial judge terminated the proceedings at defendant's behest. Under these circumstances, we find that the double jeopardy clause is inapplicable.

The next issue presented is whether any principle of law prohibits the State from charging defendant Ruiz with murder although it had accepted a plea of guilty to involuntary manslaughter from Mark King, an

accomplice. Defendant's argument at the trial court level was that general principles of equal protection, due process, fundamental fairness or collateral estoppel prohibit the State from taking inconsistent positions regarding Ruiz and King; that is, the State cannot constitutionally take the position that the act of shooting the rifle was the result of an unintentional act as to King, but was the result of an intentional act as to Ruiz. The State contends that its decision is not offensive to due process, equal protection, fundamental fairness, or any other constitutional principle, but rather lies within the realm of prosecutorial discretion; nor does it deem itself collaterally estopped.

■ The authorities support the State's position. It is not a denial of equal protection for the State to prosecute the principal for a crime although his accomplices are not charged (*People v. Tillman* (1972), 4 Ill. App. 3d 910, 282 N.E.2d 231); nor is it a denial of equal protection for the State to charge a defendant with probation violation, yet charging other probationers with the substantive offense which was the basis of the violation. (*People v. Golz* (1977), 53 Ill. App. 3d 654, 368 N.E.2d 1069, *cert. denied* (1978), 437 U.S. 905, 57 L. Ed. 2d 1134, 98 S. Ct. 3091.) There is no constitutional right for a defendant to be offered the opportunity to plea bargain. (*People v. Hampton* (1973), 14 Ill. App. 3d 427, 302 N.E.2d 723.) The permissible perimeters of prosecutorial discretion were succinctly staked out by the United States Supreme Court recently in *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 364, 54 L. Ed. 2d 604, 611, 98 S. Ct. 663, 668, in which it stated:

> "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' *Oyler v. Boles*, 368 U.S. 448, 456."

In the case before us, we find no prosecutorial reliance upon an unjustifiable standard as would warrant judicial intercession.

■■ In a case decided this year, *People v. Panzer* (1979), 73 Ill. App. 3d 1, 391 N.E.2d 467, defendant was charged with and tried for murder; his accomplice pleaded guilty to involuntary manslaughter. Defendant there argued that the State's acceptance of that guilty plea was an admission by the State that there was evidence of involuntary manslaughter as to defendant, and that an appropriate instruction to that effect should have been given to the jury. The appellate court held that the instruction was

properly refused because the acceptance of a plea of guilty to involuntary manslaughter from an accomplice is not a factual determination of the accomplice's innocence regarding murder, but rather is a decision made within the realm of prosecutorial discretion. In *Newman v. United States* (D.C. Cir. 1967), 382 F.2d 479, defendant claimed it was a denial of equal protection and due process for the district attorney to accept a plea of guilty for a lesser offense from his co-defendant, while refusing to accept the same plea from defendant. The court, in holding that this decision was within the prosecution's discretion and not prohibited by the due process and equal protection clause, stated (382 F.2d 479, 481-82):

"Two persons may have committed what is precisely the same legal offense but the prosecutor is not compelled by law, duty or tradition to treat them the same as to charges. On the contrary, he is expected to exercise discretion and common sense to the end that if, for example, one is a young first offender and the other older, with a criminal record, or one played a lesser and the other a dominant role, one the instigator and the other a follower, the prosecutor can and should take such factors into account; no court has any jurisdiction to inquire into or review his decision."

The evidence adduced by the State in this case underscores the above-quoted language from *Newman.* Here, Ruiz was said to have been the instigator, the supplier of ammunition, the ardent pursuer of "one more chance to make a shot" after previous attempts to fire the weapon failed. He succeeded in his expressed desire to "make a hit on the Royals." King, although the supplier of the lethal weapon and present during the commission of the offense, did not demonstrate, insofar as the evidence reveals, a state of mind or cold blooded intent to murder even approaching that attributed to Ruiz. The decision of the State to prosecute differently in each case was clearly justified. We find no fundamental unfairness in that decision. See also *United States v. Bell* (D.C. Cir. 1974), 506 F.2d 207.

■ Defendant cites no cases which directly lend authority to his position; rather, he argues that as a general proposition of law, due process requires the State to be bound by its previous inconsistent position; and that when his general proposition is applied to the facts of this case, the State is required to charge defendant with the same offense to which his accomplice pleaded guilty. To support the proposition he has constructed, defendant cites *Santobello v. New York* (1971), 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495 (Douglas, J., concurring), and *People v. Taylor* (1974), 12 Cal. 3d 686, 527 P.2d 622, 117 Cal. Rptr. 70. In *Santobello,* the Supreme Court found that the State had reneged on its sentencing commitment to that defendant. In *Taylor,* the State was precluded from trying an accomplice for murder when the perpetrator of

the crime was acquitted for want of requisite intent, the parties there being in the exact opposite position to that which they occupy in the present case. Nothing in either case lends support to defendant's contentions.

The essence of the defendant's theory of collateral estoppel is that the State, by accepting a plea of guilty of involuntary manslaughter from defendant's accomplice, has already litigated the issue of defendant's mental state and is, therefore, collaterally estopped from raising it again in the principal case; however, the doctrine is not applicable to the instant case because the issue of defendant's mental state was never litigated. The State's acceptance of a guilty plea from an accomplice for a lesser offense than that which the perpetrator is charged is not a judicial determination that the mental state necessary for the greater offense does not exist. *United States v. Coppola* (10th Cir. 1975), 526 F.2d 764; *People v. Panzer* (1979), 73 Ill. App. 3d 1, 391 N.E.2d 467; *People v. Hines* (1975), 28 Ill. App. 3d 976, 329 N.E.2d 903, *appeal denied* (1975), 60 Ill. 2d 599.

The State argues that any attempt on the part of the judiciary to participate in the decision making process which determines the offenses a defendant will be charged with is a violation of the separation of powers doctrine. (Ill. Const. 1970, art. II, §1.) In *People v. Rotramel* (1972), 5 Ill. App. 3d 196, 282 N.E.2d 484, defendants were charged with driving a motor vehicle while under the influence of intoxicating liquor. The trial court, on its own motion, amended the face of the complaint to charge the defendants with reckless driving. The appellate court held (5 Ill. App. 3d 196, 198-99):

"The court was clearly without authority to proceed as it did. By statute the State's Attorney is charged with the commencement and prosecution of criminal cases within the county. (Ill. Rev. Stat. 1969, ch. 14, par. 5.) In the exercise of his public duty, he is granted certain discretionary powers, one of which is to determine the offense which can and should properly be charged. Article III of the Illinois Constitution divides the powers of government among the legislative, executive and judicial departments and provides that none of these shall exercise powers belonging to the others. The State's Attorney's office is a part of the executive branch. It is clear that the judicial department may not take as its own discretionary powers vested in an executive officer. *People v. Rhodes* (1967), 38 Ill. 2d 389, 396; *People v. Graber* (1946), 394 Ill. 362, 370-371; *People v. Baron* (1970), 130 Ill. App. 2d 588, 264 N.E.2d 423, 425-426."

See also *People v. McCollough* (1974), 57 Ill. 2d 440, 444, 313 N.E.2d 462; and *People v. Deems* (1979), 74 Ill. App. 3d 543, 546.

From the foregoing, we must find that the order which estopped the State from prosecuting on the charge of murder was error and is reversed, as is the apparently intended dismissal said to reflect only the effect of the estoppel order, with directions to vacate the same and conclude the trial.

We now address the request by the State that the cause be remanded for a new trial before a different tribunal because of the predisposition of the trial judge in regard to the charges under the facts adduced at trial. We have carefully reviewed the record and find that the remarks of the trial judge in discussing the merits of defendant's contentions do not require reassignment of this case upon remand.

Reversed and remanded with directions.

STAMOS, P. J., and PERLIN, J., concur.