THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DON BURTON, Defendant-Appellant.

Fourth District    No. 16994

Opinion filed October 15, 1981.

Daniel D. Yuhas and Don L. Johnson, both of State Appellate Defender's Office, of Springfield, for appellant.

Hugh Finson, State's Attorney, of Monticello, for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:

We here compare "good time" for felons with "good behavior allowance" for misdemeanants.

Specifically, does the constitution permit a felon sentenced to one year to be released before a misdemeanant sentenced to only 6 months?

Yes.

We affirm.

Burton was convicted of reckless conduct (a Class A misdemeanor) and sentenced to 6 months at the Vandalia Correctional Center. While incarcerated, Burton will be subject to the Misdemeanant Good Behavior Allowance Act (Ill. Rev. Stat. 1979, ch. 75, pars. 30-34), which provides that misdemeanants are entitled to a cumulative "good behavior allowance." However, the Act will not permit Burton to accumulate the equivalent of the day-for-day good time credit available to felons under section 3—6—3(a)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1003—6—3(a)(2)). Even if Burton accumulates all possible good time credits during his six-month sentence, it is still possible for a felon serving a one-year sentence to be released earlier than Burton. (A felon can receive up to 90 days' good-time credit for "meritorious service" in addition to his day-for-day good time credits. Ill. Rev. Stat. 1979, ch. 38, par. 1003—6—3(a)(3).)

Burton contends that such a good time credit scheme violates his constitutional rights to due process and equal protection under the Federal and State constitutions.

I

■■■ When determining whether a statute violates *due process*, a court must determine "whether the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare." (*Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152, 159, 128 N.E.2d 691, 695.) Burton argues that the good time provision for misdemeanants is not reasonably designed to fulfill the purposes of the Unified Code of Corrections, which are set forth in section 1—1—2 of the Code (Ill. Rev. Stat. 1979, ch. 38, par. 1001—1—2):

> "(a) prescribe sanctions proportionate to the seriousness of the offenses and permit the recognition of differences in rehabilitation possibilities among individual offenders;
>
> (b) forbid and prevent the commission of offenses;
>
> (c) prevent arbitrary or oppressive treatment of persons adjudicated offenders or delinquents; and
>
> (d) restore offenders to useful citizenship."

Defendant contends that a scheme which can cause a misdemeanant to be incarcerated longer than a felon and offers misdemeanants less incentive for good conduct is not "reasonably designed to remedy the evils" to which it is directed—*i.e.*, (1) the sanctions end up not being proportionate to the seriousness of the offense; (2) it does not prevent arbitrary and oppressive treatment of misdemeanants; and (3) it does not encourage misdemeanants to become useful citizens.

Burton's position as to due process, however, has two fundamental weaknesses. First, the Misdemeanant Good Behavior Allowance Act is not a part of the Unified Code of Corrections, having been enacted several years before the Code. Thus, the purposes set forth in the Code have no application to the Act. The purpose of the Act would seem to be to provide a system for rewarding misdemeanants in order to promote prison discipline, and it certainly accomplishes that goal.

Second, even assuming that the purposes set forth in section 1—1—2 of the Code were applicable to the Act, the Act *is* reasonably designed to accomplish some of these purposes. The Act recognizes the differences in rehabilitative possibilities among various offenders. Misdemeanants have committed offenses which society regards as less serious than those committed by felons. As such, felons are in greater need of rehabilitation and need a greater incentive, in the form of good time credits, to get them to conform their behavior to what society will accept. In addition, the Act works toward restoring offenders to useful citizenship. It encourages misdemeanants to behave properly while incarcerated and thus develop behavior habits that will continue after their imprisonment. Section 1—1—2 states various purposes—rehabilitation, deterence, punishment—which are not necessarily consistent. Thus, one particular provision cannot hope to accomplish all these goals. The Act is quite reasonably designed to fulfill some of the purposes of the Code and therefore withstands Burton's due process attack. The fact that day-for-day credit would perhaps be even more effective in achieving the purposes of section 1—1—2 does not make the Act invalid; the due process clause requires only that a statute be reasonably designed to accomplish its purposes, not that it be the best means of accomplishing them. (*Bell v. Wolfish* (1979), 441 U.S. 520, 60 L. Ed. 2d 447, 99 S. Ct. 1861.) Burton's due process arguments are without merit.

## II

The threshold question in any *equal protection* discussion is whether similarly situated people are being treated dissimilarly. The court in *People v. Bradley* (1980), 79 Ill. 2d 410, 416, 403 N.E.2d 1029, 1031, said:

> "The equal protection clause does not deny States the power to treat different classes of persons in different ways. [Citations.] Only '[w]hen the law lays an unequal hand on those who have committed intrinsically the same quality of offense and [penalizes] one and not the other' does the equal protection clause come into play. [Citations.] That clause requires equality between groups of persons 'similarly situated'; it does not require equality or proportionality of penalities for dissimilar conduct. [Citations.]"

Burton assumes that misdemeanants and felons are similarly situated and

that the disparity between their good time credit schemes thus violates the equal protection clause.

It is true that these two groups are similarly situated in that they can be housed in the same facility and are subject to the same rules and conditions. But the similarity ends there. Most fundamentally, felons and misdemeanants differ in that felons have committed offenses which society regards as more serious than those committed by misdemeanants. Every felon, therefore, is sentenced to a longer period of incarceration than is any misdemeanant. (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—8—1 and 1005—8—3.) The fact that felons have committed more serious offenses than misdemeanants is also reflected in the fact that felons—but not misdemeanants—become ineligible to hold public office. (Ill. Const. 1970, art. XIII, §1.) Furthermore, even though he is released early due to the accumulation of good time credits, a felon can be reincarcerated for an act which would constitute a violation of parole. (Ill. Rev. Stat. 1979, ch. 38, par. 1003—3—9(a)(3)(i)(B).) A misdemeanant's early release, however, is unconditional.

It is unquestionable, then, that felons are a group qualitatively distinct from misdemeanants in that they have done acts which society regards as more serious infractions. The legislature, therefore, was free to do what it did—*i.e.*, provide different treatment for the two groups. The cases relied upon by Burton, *United States ex rel. Sero v. Preiser* (2d Cir. 1974), 506 F.2d 1115, *cert. denied* (1975), 421 U.S. 921, 43 L. Ed. 2d 789, 95 S. Ct. 1587, and *Bolling v. Manson* (D. Conn. 1972), 345 F. Supp. 48, are inapposite, for they deal with good time credit schemes giving disparate treatment to criminals who have committed the same offense. Rather, the relevant cases are those which hold that a legislature may apply different good time credit rules to criminals depending upon the offenses they have committed. *Jeffery v. Malcolm* (S.D.N.Y. 1973), 353 F. Supp. 395; *Sutton v. Garmon* (1980), 245 Ga. 685, 266 S.E.2d 497; *Jones v. Jenkins* (1978), 276 Ind. 619, 372 N.E.2d 1163; *Amado v. Superintendent, Massachusetts Correctional Institution at Walpole* (1974), 366 Mass. 45, 314 N.E.2d 432. See also *Trivento v. Commissioner of Corrections* (1977), 135 Vt. 475, 380 A. 2d 69.

Under our analysis, then, Burton has failed to clear the first hurdle in his equal protection attack: he has not shown that similarly situated individuals are being treated differently. But even were we to proceed to the next step, we would find that the different good time credit rules between felons and misdemeanants "rationally furthers some legitimate, articulated state purpose." (*McGinnis v. Royster* (1973), 410 U.S. 263, 270, 35 L. Ed. 2d 282, 289, 93 S. Ct. 1055, 1059.) Good time credit programs are enacted in order to promote prison discipline. (*Watson v. Industrial Com.* (1966), 100 Ariz. 327, 414 P.2d 144; *Amado v. Superintendent*; *Post v. Ruth*

(Miss. 1978), 354 So. 2d 1111; *Woodring v. Whyte* (W.Va. 1978), 242 S.E.2d 238.) Since felons have been proven guilty of more serious offenses than have misdemeanants, it was quite reasonable for the legislature to think that felons need greater incentives than do misdemeanants to conform their behavior to prison rules. *Jeffery v. Malcolm.*

## III

■■■ Burton has also argued that the prosecutor abused his discretion in filing a charge of reckless conduct. The evidence showed that Burton began overtaking another car on Route 105. As he got even with the other car, he turned his steering wheel sharply to the right so that the two vehicles almost collided. He repeated this antic two or three times. For this conduct, Burton was charged under section 12—5(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 12—5(a)):

> "(a) A person who causes bodily harm to or endangers the bodily safety of an individual by any means, commits reckless conduct if he performs recklessly the acts which cause the harm or endanger safety, whether they otherwise are lawful or unlawful."

The Committee Comments to section 12—5 state that it "is aimed *primarily* at the reckless homicide type of conduct where no homicide results \* \* \*." (Emphasis added.) (Ill. Ann. Stat., ch. 38, par. 12—5, Committee Comments, at 573 (Smith-Hurd 1979).) That language, however, does not limit applicability of the statute to such conduct. (*People v. Swanson* (1980), 84   Ill. App. 3d 245, 405 N.E.2d 483.) Burton's acts obviously endangered the bodily safety of the individuals in the other car so that his conduct fell within the coverage of section 12—5(a). The prosecutor, invested with broad discretion in determining what charges to file (*People v. Ruiz* (1979), 78 Ill. App. 3d 326, 396 N.E.2d 1314; *People v. Golz* (1977), 53 Ill. App. 3d 654, 368 N.E.2d 1069, *cert. denied* (1978), 437 U.S. 905, 57 L. Ed. 2d 1134, 98 S. Ct. 3091), acted properly.

Affirmed.

GREEN and LONDRIGAN, JJ., concur.