(Docket No. 47070.—

# THE PEOPLE *ex rel.* HENRY HEMINGWAY, Petitioner, v. RICHARD ELROD, Sheriff, *et al.*, Respondents.

*Opinion filed January 30, 1975.*

Original *habeas corpus* proceeding.

Michael Buckley Bolan, of Chicago, for petitioner.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, and Patrick T. Driscoll, Jr., and Raymond J. Prosser, Assistant State's Attorneys, all of Chicago, of counsel), for respondents.

MR. JUSTICE RYAN delivered the opinion of the court:

This is an original action in this court. We granted petitioner leave to file a petition for a writ of *habeas corpus* pursuant to our Rule 381 (Ill. Rev. Stat. 1973, ch. 110A, par. 381). Petitioner was charged with murder in the circuit court of Cook County. At the hearing on his motion to set bail, the trial court found that he was not entitled to bail under section 9 of article I of the Illinois Constitution of 1970, even though the petitioner was not charged with killing a person for whose murder the statute prescribes the death penalty. (See Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1A.) The sole issue of law presented is whether the petitioner, who is charged with the offense of murder, but who is not potentially subject to the death penalty if convicted, is entitled to bail as a matter of right under section 9 of article I of the Illinois Constitution of 1970.

With regard to bail, section 9 of article I of the 1970 Constitution provides: "All persons shall be bailable by sufficient sureties, except for capital offenses where the proof is evident or the presumption great." The same language was contained in section 7 of article II of the 1870 Constitution. The General Assembly had implemented these constitutional provisions in section 110—4 of the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, par. 110—4), which provided:

"Sec. 110—4. Bailable Offenses.
    (a) All persons shall be bailable before conviction, except when death is a possible punishment for the

offenses charged and the proof is evident or the presumption great that the person is guilty of the offense.

(b) A person charged with an offense for which death is a possible punishment has the burden of proof that he should be admitted to bail."

In *Furman v. Georgia,* 408 U.S. 238, 33 L. Ed. 2d 346, 92 S. Ct. 2726, and in *Moore v. Illinois,* 408 U.S. 786, 33 L. Ed. 2d 706, 92 S. Ct. 2562, the United States Supreme Court held that the imposition of the death penalty under statutes like those of Illinois violates the eighth and fourteenth amendments of the United States Constitution. Both of these cases were decided June 29, 1972. Possibly to avoid the effect of these decisions on bailable offenses in Illinois the General Assembly amended section 110—4 of the Code of Criminal Procedure, effective July 1, 1972, by substituting the words "the offense charged is murder, aggravated kidnapping or treason" for the words "death is a possible punishment for the offenses charged" in section 110—4(a) and made a corresponding change in section 110—4(b).

The petitioner contends that he is not charged with a capital offense, that is, one for which the death penalty may be imposed and therefore under section 9 of article I of the 1970 Constitution he must be admitted to bail. The State contends that under the amendment to section 110—4(a) the offense of murder is nonbailable except where the proof is not evident or the presumption not great and the burden of proving this exception is on the petitioner. It is the State's contention that this burden has not been met.

Several States have considered the effect of *Furman v. Georgia* and statutes which do not authorize the imposition of the death penalty in light of their constitutional provisions relating to bail. One group has followed what may be called a "penalty" theory and concluded that the term "capital offense" or similar words in their constitutions referred to the penalty that could be imposed upon a

person found guilty of a crime. Since the death penalty could no longer be imposed, these cases conclude that there are no offenses in their respective States which are nonbailable. See *In re Tarr* (1973), 109 Ariz. 264, 508 P.2d 728; *State v. Aillon* (1972), ―――― Conn. ――――, 295 A.2d 666; *Donaldson v. Sack* (Fla. 1972), 265 So. 2d 499; *In re Ball* (1920), 106 Kan. 536, 188 P. 424; *State v. Pett* (1958), 253 Minn. 429, 92 N.W.2d 205; *State v. Johnson* (1972), 61 N.J. 351, 294 A.2d 245; *Edinger v. Metzger* (1972), 32 Ohio App. 2d 263, 61 Ohio Op. 2d 306, 290 N.E.2d 577; *Commonwealth v. Truesdale* (1972), 449 Pa. 325, 296 A.2d 829; *Ex parte Contella* (Tex. Crim. App. 1972), 485 S.W.2d 910; *In re Perry* (1865), 19 Wis. 676.

Another group of States follows the "classification" theory, which holds that the constitutional provisions refer to a category of offenses the gravity of which was determined both for the purpose of bail before trial and for the purpose of punishment after trial. The constitutions and the legislatures have classified crime according to its gravity, and this classification for purpose of bail remains unaffected by *Furman v. Georgia.* See *People ex rel. Dunbar v. District Court* (1972), 179 Colo. 304, 500 P.2d 358; *State v. Flood* (1972), 263 La. 700, 269 So. 2d 212; *Hudson v. McAdory* (Miss. 1972), 268 So. 2d 916; *Jones v. Sheriff, Washoe County* (1973), 89 Nev. 175, 509 P.2d 824; *In re Kennedy* (Okla. Crim. App. 1973), 512 P.2d 201; *Roll v. Larson* (1973), 30 Utah 2d 271, 516 P.2d 1392.

California originally followed the "classification theory" (*People v. Anderson* (1972), 6 Cal. 3d 628, 93 P.2d 880, 100 Cal. Rptr. 152), and later adopted the "penalty" theory. See *In re Boyle* (1974), 11 Cal. 3d 165, 520 P.2d 723, 113 Cal. Rptr. 99.

It is apparent that the General Assembly by the 1972 amendments to section 110―4 of the Code of Criminal Procedure attempted to adopt the "classification" theory, and the State urges this court to do likewise.

We cannot accept the State's argument. This court has held that a capital case is one in which the death penalty may, but need not necessarily, be inflicted. "It is in this sense that the term is used when dealing with the rights of an accused prior to a judgment of conviction, such as the right to bail." (*People v. Turner* (1964), 31 Ill.2d 197, 198-9.) To adopt the "classification" theory urged by the State would be contrary to the clear expression of this court in *Turner* and contrary to what we consider to be the generally accepted meaning of the term "capital offense." It would likewise be contrary to the understanding of the delegates to the 1970 constitutional convention as reflected in the debates. (See 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1654-1656.) To the extent that section 110—4 of the Code of Criminal Procedure attempts to render nonbailable offenses other than those for which the death penalty may be imposed, we hold the same to be invalid and contrary to the provisions of section 9 of article I of the 1970 Constitution.

Petitioner, not being charged with an offense for which the death penalty may be imposed, is therefore "bailable" under the provisions of our constitution. The petitioner here argues, as have defendants in other cases in which no opinions were filed because the issues became moot, that a person charged with a bailable offense has an *absolute* right to be released on bail. Petitioner cites *People ex rel. Sammons v. Snow* (1930), 340 Ill. 464, in support of his contention. Although that case speaks of a right to bail before conviction, it does not refer to this right as being absolute.

In our opinion the constitutional right to bail must be qualified by the authority of the courts, as an incident of their power to manage the conduct of proceedings before them, to deny or revoke bail when such action is appropriate to preserve the orderly process of criminal procedure. This action must not be based on mere

suspicion but must be supported by sufficient evidence to show that it is required. Thus keeping an accused in custody pending trial to prevent interference with witnesses or jurors or to prevent the fulfillment of threats has been approved. (See *Fernandez v. United States,* 5 L. Ed. 2d 683, 81 S. Ct. 642 (Harlan, Circuit Justice, 1961); *Carbo v. United States,* 7 L. Ed. 2d 769, 82 S. Ct. 662 (Douglas, Circuit Justice, 1962); see also Annot. (1972), 30 L. Ed. 2d 952, 972.) We think that under both the United States and Illinois constitutions the denial of bail to an accused under such circumstances is within the inherent power of the court. Also, if a court is satisfied by the proof that an accused will not appear for trial regardless of the amount or conditions of bail, bail may properly be denied. *State v. Johnson* (1972), 61 N.J. 351, 294 A.2d 245; *Commonwealth v. Truesdale* (1972), 449 Pa. 325, 296 A.2d 829.

By holding that the right to bail is not absolute we are not adopting the principle of preventive detention of one charged with a criminal offense for the protection of the public, and it is not necessary here to discuss the wisdom or the constitutionality of that principle. The subject has been discussed at length by commentators. (See Foote, *The Coming Constitutional Crisis in Bail: II,* 113 U. Pa. L. Rev. 1125, 1164 (1965); Packer, *Two Models of the Criminal Process,* 113 U. Pa. L. Rev. 1, 38 (1964); Comments and Notes, *Bail: The Need for Reconsideration,* 59 Nw. U.L. Rev. 678, 691 (1964); Note, *Preventive Detention Before Trial,* 79 Harv. L. Rev. 1489 (1966); Hermann, *Preventive Detention, A Scientific View of Man, and State Power,* 1973 U. Ill. L.F. 673.) The subject was also seriously considered by the advisory committee on pretrial proceedings of the American Bar Association Project on Minimum Standards for Criminal Justice. The committee concluded that it should not recommend the adoption of a preventive-detention standard. See ABA Standards Relating to Pretrial Release (Approved Draft

1968), Commentary, at 69.

The object of bail, of course, is to make certain the defendant's appearance in court and is not allowed or refused because of his presumed guilt or innocence. While we condemn the practice of setting excessive bail solely for the purpose of retaining a defendant in custody, we do recognize that many crimes are committed· by those who are free on bail awaiting trial (see P. Wice, Freedom for Sale, A National Study of Pretrial Release 74-75 (1974)) and acknowledge the need to balance the right of an accused to be free on bail against the right of the general public to receive reasonable, protective consideration by the courts. The advisory committee on pretrial proceedings of the American Bar Association Project on Minimum Standards for Criminal Justice attempted to achieve this balance in its recommended standards relating to pretrial release.

Instead of recommending pretrial preventive detention as a means of protecting the public from potential harm from bailed offenders, standards relating to release on bail were recommended which contained certain restrictive conditions. ABA Standards Relating to Pretrial Release (1968), Standard 5.5, provides:

"5.5 Prohibition of wrongful acts pending trial.

Upon a showing that there exists a danger that the defendant will commit a serious crime or will seek to intimidate witnesses, or will otherwise unlawfully interfere with the orderly administration of justice, the judicial officer, upon the defendant's release, may enter an order:

(a) prohibiting the defendant from approaching or communicating with particular persons or classes of persons, except that no such order should be deemed to prohibit any lawful and ethical activity of defendant's counsel;

(b) prohibiting the defendant from going to certain described geographical areas or premises;

(c) prohibiting the defendant from possessing any dangerous weapon, or engaging in certain described

activities or indulging in intoxicating liquors or in certain drugs;

(d) requiring the defendant to report regularly to and remain under the supervision of an officer of the court."

Section 110—10 of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 110—10) defines the conditions that may be imposed on admitting a defendant to bail before conviction. These are that the defendant will:

"(1) ***

(2) Submit himself to the orders and process of the court; and

(3) ***

(4) [submit to] [s]uch other reasonable conditions as the court may impose."

It seems clear that subparagraphs (2) and (4) above are broad enough to authorize a judge to incorporate as conditions of the order releasing an accused on bail the appropriate provisions of Standard 5.5 and to specifically provide as a condition of release that the accused shall not commit a criminal offense while on bail.

Standard 5.6 provides for the procedures to be followed if a condition of the release is violated as follows:

"5.6 Violations of conditions on release.

Upon a verified application by the prosecuting attorney alleging that a defendant has willfully violated the conditions of his release, a judicial officer should issue a warrant directing that the defendant be arrested and taken forthwith before the court of general criminal jurisdiction for hearing. A law enforcement officer having reasonable grounds to believe that a released felony defendant has violated the conditions of his release should be authorized, where it would be impracticable to secure a warrant, to arrest the defendant and take him forthwith before the court of general criminal jurisdiction."

Section 110—3 of the Code of Criminal Procedure provides: "Upon failure to comply with any condition of a bail bond or recognizance the court having jurisdiction at

the time of such failure may, in addition to any other action provided by law, issue a warrant for the arrest of the person at liberty on bail or his own recognizance." We think it clear that, where it would be impractical to secure a warrant, a law-enforcement officer in the manner provided in Standard 5.6 is also authorized to arrest a felony defendant on bail without a warrant.

Standard 5.7 provides sanctions for violations of conditions of the release orders as follows:

"5.7 Sanctions for violation of conditions.

After hearing, and upon finding that the defendant has willfully violated reasonable conditions imposed on his release, the court should be authorized to impose different or additional conditions upon defendant's release or revoke his release."

Standard 5.8 sets out a distinct procedure to be followed where a released person commits a serious offense:

"5.8 Commission of serious crime while awaiting trial.

Where it is shown that a competent court or grand jury has found probable cause to believe that a defendant has committed a serious crime while released pending adjudicating of a prior charge, the court which initially released him should be authorized, after appropriate hearing, to review and revise the conditions of his release or to revoke his release where indicated. In cases in which release is revoked, the case should be tried as soon as possible."

Section 110—6(a) and (d) of the Code of Criminal Procedure provides for bringing a defendant before the court for a hearing on an alleged breach or threatened breach of any of the conditions of the bail bond and provides that the court may increase or alter the conditions of the bail bond. The court has the inherent authority to enforce its orders and to require reasonable conduct from those over whom it has jurisdiction. To this end the court has the authority to impose sanctions for the violation of conditions imposed upon a defendant's release and for the commission of a felony by a defendant while

released on bail or recognizance, including the revocation of his release in the manner provided in Standards 5.6, 5.7 and 5.8.

In our opinion, by the proper application of the American Bar Association Standards and the sections of the Code of Criminal Procedure both cited above, together with the conclusions of this court contained in this opinion, an appropriate balance can be achieved between the right of an accused to be free on bail pending trial and the need of the public to be given necessary protection.

The petitioner is remanded to the custody of the respondent sheriff, and the circuit court of Cook County is directed to proceed not inconsistently with the views expressed in this opinion.

*Petitioner remanded, with directions.*