**Jacques RIVERA, Petitioner–Appellant,**

v.

**Kenneth BRILEY, Warden, Statesville Correctional Center, Respondent–Appellee.**

No. 98–4086.

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 21, 2002.*

Decided Nov. 21, 2002.

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before FAIRCHILD, EVANS, and WILLIAMS, Circuit Judges.

### ORDER

Illinois prisoner Jacques Rivera was convicted after a bench trial of first-degree murder and sentenced to 80 years' imprisonment. After unsuccessfully exhausting his state court remedies, Rivera filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, alleging that (1) the evidence against him, which consisted solely of a young boy's eyewitness testimony, was insufficient to establish his guilt beyond a reasonable doubt, and (2) the trial

court prematurely decided his guilt as shown by the court's mid-trial bail revocation. The district court rejected both claims on their merits, but granted a certificate of appealability as to Rivera's claim of prejudgment. We deny Rivera's request for a certificate of appealability as to his insufficient-evidence claim, and affirm.

### Background

In August 1988 sixteen-year old Felix Valentin was shot multiple times as he sat in a car parked in an alley on Chicago's westside. He later died from his wounds. Eleven-year old Orlando Lopez witnessed the shooting and identified Rivera as the gunman. Rivera was arrested in September 1998, and the trial court granted bail. Rivera remained free on bond until April 1, 1990, when he was arrested for drug possession. Based on this new charge, the state requested an increase in bail, but the trial court allowed the existing bond to stand for both offenses. Rivera was not released, however, because an outstanding warrant in another matter surfaced in the jail's computer. On April 5, Rivera was brought to trial, and defense counsel informed the court of the outstanding warrant, which, counsel explained, he was attempting to resolve.

The bench trial commenced that day. The state first called a relative of the victim who testified generally about the life and death of Valentin. Lopez, who was thirteen years old by the time of trial, was the state's second and final witness in its case-in-chief. Lopez testified that he knew Valentin, who was a friend of his older sister. According to Lopez, Valentin's older brother was a member of the Campbell Boys street gang, which at the time was feuding with two other area gangs, the Latin Kings and the Imperial Gangsters. Lopez said that on the day of the murder he was crossing an alley on the

way to a neighborhood video store. In the alley, he saw a man standing next to Valentin's parked car. Lopez saw the man fire several shots into the car at Valentin. Lopez then ran to the video store, but when store clerks refused to call the police, Lopez ran back to the alley and hid in an alcove about twenty-five feet away from Valentin's car. From there he saw the man shoot into the car one last time. After firing the final shot, the shooter looked in Lopez's direction (but apparently did not see Lopez), jumped into another car parked in the middle of the street, and sped away from the scene.

Lopez testified that he immediately recognized the man as someone he had seen playing baseball at nearby Humboldt park several times that summer. Lopez described the shooter as approximately 5 feet 10 inches tall, dressed in black, and wearing his long dark hair in a ponytail dyed gold. Black and gold were the colors of the Latin Kings, and after Lopez gave this description to police, they showed him photo albums of suspected Latin Kings gang members. Lopez identified Rivera's picture in one of them and later picked Rivera out of a line up. He also pointed to Rivera as the gunman from the witness stand.

The state rested, and the defense called Chicago police officer Craig Letrich to establish that the victim himself identified someone other than Rivera as the shooter. Officer Letrich testified that, as a result of his interview with Valentin the day after the shooting, he showed Valentin a photo album of suspected Imperial Gangsters. Valentin identified Jose Rodriguez, who Officer Letrich arrested, and Phillip Nueves, who was never apprehended. Rodriguez, however, was released without being charged.

Next, Rivera testified and denied any involvement in the shooting. Rather, he said that he spent that day at home with his common-law wife and their children. Rivera, who was twenty-four years old at the time of trial, admitted belonging to the Latin Kings when he was younger but claimed he was no longer a member. He further testified that he never dyed any part of his hair gold and, although he volunteered at the park's recreation center, never played baseball there.

Following Rivera's testimony the defense rested, and the case was continued. The next day, April 6, without defense counsel or Rivera present, the trial court sua sponte revoked Rivera's bail, stating that the outstanding warrant had not been resolved, and the court was "concerned about this matter, having taken testimony in the matter yesterday." Shortly thereafter, defense counsel moved for reconsideration, which the trial court denied. The court reasoned that the purpose of bail is to permit the defendant to freely assist counsel in the collection of evidence and preparation for trial; because that purpose had been fulfilled, the court concluded, Rivera's bail had been properly revoked.

The trial resumed on April 16, and the state presented its rebuttal witness, police officer Renaldo Guevera. Officer Guevera, a gang crimes investigator, testified that when he arrested Rivera in September 1988, Rivera was wearing his hair in a gold ponytail. He further testified that he saw Rivera at Humboldt park several times that past summer. In surrebuttal, Rivera called his pastor Fernando Rivas and his fellow recreation center volunteer Guillermo Osorio, who both testified that they never saw Rivera with any part of his hair dyed and that, to their knowledge, Rivera had left the Latin Kings gang. Osorio also said that Rivera never played baseball at Humboldt park.

The trial court found Rivera guilty of first-degree murder, stating simply that

"having considered the evidence received on the trial of the case, [the court] finds the defendant guilty." Rivera appealed, raising the same two claims that he makes in his § 2254 petition. The Illinois Appellate Court affirmed. Applying the familiar rule announced in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the appellate court concluded that Lopez's identification of Rivera was sufficiently reliable to support the trial court's finding of guilt beyond a reasonable doubt. The appellate court also determined that the trial court's bail revocation did not imply that he presumed Rivera guilty; rather, the trial court was simply exercising its legitimate discretion to ensure Rivera's continued presence at his murder trial. Rivera's petition for leave to appeal to the Illinois Supreme Court was denied in June 1992.

When, as here, a state court adjudicates a prisoner's constitutional claim on the merits, a federal court may grant habeas relief only if the state court's decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The district court concluded that the Illinois Appellate Court's decision did not involve an unreasonable application of Supreme Court law, and thus denied Rivera habeas corpus relief. The district court, however, granted Rivera a certificate of appealability limited to one issue: whether the trial court's mid-trial bail revocation showed that the court prematurely decided Rivera's guilt and thereby deprived Rivera of his right to a fair trial.

### Analysis

■ We review the state court and district court's conclusions *de novo* "but with

a grant of deference to any reasonable state court decision." *Hardaway v. Young*, 302 F.3d 757, 761 (7th Cir.2002). A state court decision is reasonable so long as it is "one of several equally plausible outcomes." *Boss v. Pierce*, 263 F.3d 734, 742 (7th Cir.2001). Here, the Illinois Appellate Court reasonably concluded that the trial court's mid-trial bail revocation did not demonstrate that Rivera was deprived of his right to a fair trial.

A criminal defendant is entitled to a presumption of innocence under the Fourteenth Amendment. *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). Bail is intended to ensure a criminal defendant's appearance at trial, and under Illinois law, a trial court has discretion to revoke a defendant's bail when the circumstances warrant doing so. *See People ex rel. Hemingway v. Elrod*, 60 Ill.2d 74, 322 N.E.2d 837, 840–41 (Ill.1975). The trial court revoked Rivera's bail in the middle of his bench trial upon learning that an outstanding warrant against Rivera had not been resolved. Rivera contends that the mid-trial bail revocation shows that the court violated his right to be presumed innocent.

The Illinois Appellate Court disagreed with Rivera's interpretation of the bail revocation, viewing it as a reflection of the trial court's concern about the outstanding arrest warrant and not Rivera's guilt. The Illinois Appellate Court explained:

[T]he court had granted and extended defendant's bail and revoked it only when an outstanding arrest warrant came to light which remained unresolved and proved a source of concern to the court. The fact that this decision to revoke was made at a juncture in the proceedings where the court had received the principal evidence from both sides, does not in our judgment lead to the conclusion drawn by defendant that

he was denied his right to the presumption of innocence until the close of all evidence. Rather, we find it equally valid to attribute this timing to an exercise of discretion by the court to ensure defendant's continued presence at his murder trial.

We think that the trial court's contemporaneous comment– i.e., that it was concerned "having taken testimony in this matter yesterday"–could be construed as conveying concern about Rivera's possible guilt and not just the outstanding warrant. But we cannot say that the Illinois Appellate Court's contrary interpretation was implausible. At best the trial court's statement was ambiguous, and "[n]o rule of federal law tells state courts how to interpret ambiguous judicial statements." *Rivera v. Sheriff of Cook County*, 162 F.3d 486, 489 (7th Cir.1998).

In any event, even if the trial court based the revocation in part on its opinion of Rivera's guilt, we agree with the Illinois Appellate Court that Rivera was not denied his right to the presumption of innocence. As the appellate court noted, the trial court did not revoke bail until after the court received the principal evidence from *both* sides. The fact that the trial court had already heard Rivera's defense belies his contention that the court prejudged his case. Accordingly, the district court properly denied relief on Rivera's claim of prejudgment.

We have one remaining issue to resolve. Although the district court denied Rivera's request for a certificate of appealability on his insufficient-evidence claim, Rivera has briefed the issue. Where, as here, a petitioner presents a non-certified issue in his brief, we construe the presentation as an implicit request to amend the certificate of appealability. *Ouska v. Cahill–Masching*, 246 F.3d 1036, 1045–46 (7th Cir.2001). To amend the certificate of appealability, Riv-

era must make a substantial showing of the denial of a constitutional right and that the district court's decision to the contrary was debatable. *Id.* at 1046; *Slack v. McDaniel*, 529 U.S. 473, 483–84, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

The district court was right to deny Rivera's insufficient-evidence claim, and thus we decline to expand the certificate. In making such a claim, Rivera "faces a nearly insurmountable hurdle." *United States v. Jackson*, 177 F.3d 628, 630 (7th Cir.1999). Reversal for insufficient evidence is warranted only if, viewing the evidence in the light most favorable to the prosecution, no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Not only that, but under AEDPA, Rivera must demonstrate that the Illinois Appellate Court unreasonably applied *Jackson* in concluding that a rational trier of fact could have convicted Rivera based on the evidence here. *Piaskowski v. Bett*, 256 F.3d 687, 691 (7th Cir.2001).

Rivera cannot surmount either of these hurdles. Certainly, the evidence against Rivera was not overwhelming. The state's case hinged entirely on the testimony of a thirteen-year old witness who identified Rivera as the shooter. But, as the Illinois Appellate Court rightly pointed out, the credible testimony of one eyewitness is sufficient to support a conviction. *United States ex rel. Wandick v. Chrans*, 869 F.2d 1084, 1089 (7th Cir.1989). And, we agree with the Illinois Appellate Court's conclusion that Lopez's identification was sufficiently credible.

AFFIRMED