**2025 IL 131365**


# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS


(Docket No. 131365, 131506)

AIMEE STEWART, Petitioner-Appellant, v. HONORABLE STEVEN J. ROSENBLUM *et al*., Respondents-Appellees.


*Opinion filed September 18, 2025.*


JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.


**OPINION**

¶ 1      On May 21, 2025, we entered an order instructing the circuit court of Cook County to release petitioner, Aimee Stewart, who had been held in pretrial detention since November 7, 2024, while she awaited trial for possession of a stolen motor vehicle. 625 ILCS 5/4-103(a)(1) (West 2024). That offense would ordinarily qualify a defendant for pretrial release pursuant to article 110 of the Code of

Criminal Procedure of 1963 (Criminal Procedure Code) (725 ILCS 5/art. 110 (West 2024)) as amended by Public Acts 101-652, § 10-255, and 102-1104, § 70 (eff. Jan. 1, 2023), commonly referred to as the Pretrial Fairness Act (Act). Because the State did not file a petition seeking petitioner's detention, she was initially released following her arrest. See 725 ILCS 5/110-2(a), 110-6.1(a) (West 2024). However, following petitioner's repeated failure to appear in court, the State filed a petition for sanctions in the circuit court. Respondent, the Honorable Steven J. Rosenblum, an associate judge of the circuit court of Cook County, did not act upon the State's petition and instead declared the Act unconstitutional as applied to petitioner's case because it did not allow him to *sua sponte* indefinitely detain petitioner before trial. The court found that it had an inherent authority to detain defendants pending trial and, by enacting sections 110-6 (*id.* § 110-6) and 110-6.1 of the Act, the legislature infringed on this authority and violated the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, § 1). As a result, respondent ordered petitioner detained until her trial. For the following reasons, we find the Act does not violate the separation of powers clause as applied to this case. Therefore, respondent had no authority, under the Act or the Illinois Constitution, to indefinitely detain petitioner pending trial.

¶ 2                                    I. BACKGROUND

¶ 3        On January 2, 2024, petitioner was charged by felony complaint with one count of possession of a stolen vehicle in violation of section 4-103(a)(1) of the Illinois Vehicle Code (625 ILCS 5/4-103(a)(1) (West 2024)). The felony complaint alleged that petitioner took a vehicle from her aunt[1] without her aunt's permission. An arrest warrant for petitioner was issued the same day. The warrant was executed on February 5, 2024, and petitioner was detained until February 7, 2024, when the court entered an order that she be released from custody with conditions. The court ordered her to appear in court in person on February 28, 2024.

¶ 4        Petitioner failed to appear, and the case was continued to March 21, 2024. She once again failed to appear, and the court issued a warrant for her arrest. Petitioner

---

[1]The complaint identified the victim as petitioner's aunt, but petitioner informed the circuit court that the named victim was her grandmother.

was arrested on May 4, 2024, and detained before her next court date on May 7, 2024. She was held in custody until May 15, 2024, the date set for her preliminary hearing. The State requested a continuance, which was granted. Petitioner was released with "standard conditions" of pretrial release following the hearing and ordered to return to court on May 22, 2024. On May 22, 2024, the case was continued to June 5, 2024, on petitioner's motion.

¶ 5        Petitioner once again failed to appear in court on June 5, 2024, and the court issued an arrest warrant. Petitioner was arrested on July 27, 2024, based on this warrant and was subsequently charged with possession of a controlled substance (720 ILCS 570/402(c) (West 2024)) for being in possession of a controlled substance at the time of her arrest. Petitioner appeared in court the same day, and the case was continued on the State's motion. On July 30, 2024, the parties agreed to a continuance, and petitioner was released with pretrial release conditions and ordered to return to court on September 4, 2024.

¶ 6        On September 4, 2024, petitioner did not return to court, and a warrant was issued for her arrest. The warrant was executed on September 9, 2024, and the court ordered petitioner be detained until the next court date on September 11, 2024. On September 11, 2024, the State asked for a continuance, and the case was continued to September 24, 2024. Petitioner remained in custody. On September 24, 2024, the State asked for another continuance, and the case was continued until October 1, 2024. Petitioner was released from custody and ordered to return to court on October 1, 2024. Petitioner failed to appear, and the case was continued to October 15, 2024.

¶ 7        On October 4, 2024, petitioner was indicted by a grand jury on her pending charge of possession of a stolen motor vehicle. On October 15, the case was transferred to a new courtroom, where respondent presided. Respondent issued a warrant for petitioner's arrest when she failed to appear in court. Petitioner was arrested on November 5, 2024, and detained until the next court date on November 7, 2024.

¶ 8        On November 7, respondent began the hearing by asking petitioner if she understood she had to appear at each and every court date. Petitioner answered in the affirmative. Respondent then advised petitioner that, if she willfully failed to appear, she could be tried *in absentia* pursuant to section 115-4.1 of the Criminal

Procedure Code (725 ILCS 5/115-4.1 (West 2024)) and explained that this meant that the trial would continue without petitioner and, if convicted, she would be sentenced in her absence. Petitioner told the court she understood the admonition. The court then asked the State if it was seeking to revoke petitioner's pretrial release based on the charge for possession of a controlled substance. The State explained that the charge had been dismissed and the State was instead seeking leave to file a petition for sanctions. Respondent granted the State leave to file its petition.

¶ 9    In response to the State's petition, defense counsel explained that petitioner was hospitalized from October 13 to 28, 2024, and that was the reason she missed her court date. She did not have the paperwork to prove she was hospitalized, but counsel indicated she could provide it later. Respondent asked the State to present its petition for sanctions, and the State began by presenting the facts of the case and petitioner's criminal history. As her history of failing to appear in court and prior warrants were discussed, petitioner assured respondent "It will not happen again," to which respondent stated:

> "Oh, of course not. I totally agree with you, Miss Stewart, it will not happen again because I am not releasing you.
>
> I understand that the courts or a petition for sanctions is supposed to be limited to 30 days but the legislature is not giving me an opportunity as a judge to administer justice. She has already missed court four separate times. Four separate times the courts have released her back out on the street and she hasn't come back to court. I don't know how you run a courtroom in the state of Illinois when the only punishment for that is a few days in jail and then released and then you don't show up again. How do you ever get the case to trial or to any disposition with people like Miss Stewart, who is straight out lying to me right now when she says she will come back to court? There is no chance of that."

Petitioner interjected that she would come back to court, and respondent continued as follows:

> "Miss Stewart, it's really really hard to talk when you missed court four separate times on a case that barely has gotten to arraignment today. Four times before we can even get to arraignment. How do you ever administer justice as a judge when this is your solution is that the statute doesn't consider people like

- 4 -

Miss Stewart who never come to court? The statute as applied to a person like Miss Stewart is, quite frankly, unconstitutional. That's this court's opinion.

As a judge, my job is to administer justice and to find a way to get through cases. Miss Stewart doesn't allow us to do that under any circumstances. It does not matter how many times you release Miss Stewart, Miss Stewart is not going to come to court. You can tell by her background the time she has missed before, the time she has missed on this case, the convictions that she has, it is impossible to administer justice to Miss Stewart under the present situation with the Pretrial Fairness Act. This court will no longer go along with that situation. It is four warrants before we can even get to an arraignment date on Miss Stewart. So I am not releasing her. Defendant is to be detained."

¶ 10 Petitioner's counsel objected to respondent's finding by informing the court that petitioner was not charged with a detainable offense and petitioner did not qualify for indefinite detention based on a petition for sanctions. Responded replied,

"I understand what the petition was for. I also understand as a judge that there are limits to what we can do. The statute does not consider situations like Miss Stewart: Four separate warrants on the same case before we can even get to an arraignment. Four separate warrants. We have been on this case for a year. At times Miss Stewart has been picked up and released and not shown up to court. A year."

¶ 11 Petitioner once again interjected and informed respondent that, during that time, she had been incarcerated in a hospital twice and she could show proof of her incarceration. Respondent informed petitioner that he would review the proof but petitioner would still be detained. Petitioner's counsel objected and argued that the hearing was not a detention hearing and the State had not presented any allegations with clear and convincing evidence. Respondent agreed that it was not a detention hearing. However, he explained that he was treating it as a petition to revoke pretrial release and he had found by clear and convincing evidence that he could revoke pretrial release based on petitioner's failure to appear in court four separate times. Respondent noted the State had filed a petition for sanctions but added "I disagree with them that they are asking for sanctions." Respondent stated he would not "just assess a sanction because [he] believe[d] assessing a sanction under these circumstances d[id] not allow the court to do their job, which is to move the case

and to get something going on it." The court told petitioner she could file a motion to reconsider and provide any evidence proving she was hospitalized.

¶ 12    Petitioner filed a motion to reconsider the denial of her pretrial release on November 20, 2024, and a hearing on the motion was held on December 12, 2024. At the hearing, the State informed respondent that it would not take a position as to the constitutionality of the statute as applied to petitioner and affirmed that the State's original petition only requested sanctions. Respondent indicated that, given the State's position, he needed more time to speak with the presiding judge to determine if a special prosecutor needed to be appointed in light of his ruling on the constitutionality of the statute. Petitioner's counsel asked the court to rule on the motion because petitioner was detained and she could not appeal the earlier ruling without a ruling on the motion to reconsider. Respondent explained that he did not wish to rule without further research, and he reiterated his earlier finding that the statute was unconstitutional because it did not allow him "to do [his] job" and administer justice. Petitioner's counsel insisted that because the plain language did not allow for petitioner's continued detainment, petitioner was seeking an immediate ruling.

¶ 13    Respondent denied petitioner's motion to reconsider after summarizing the procedural posture of the case and the number of warrants that had been issued while petitioner's case was pending. Respondent noted that "I'm the first judge that she's gotten to a felony room because we still haven't even gotten to arraignment because it was impossible to get through the preliminary hearing through that point in time because every single court date in which the defendant was given she didn't show up to court." Respondent held that he was finding the statute unconstitutional because it gave him no discretion to hold petitioner under the circumstances of her case and the case would never get to "trial under the present circumstances or the way the statute treats it." He clarified his finding was as to the "part of the statute that does not allow the Court, except if the defendant picks up a new offense, either a felony or a Class A misdemeanor, in order to hold the defendant after she has violated the conditions of her release." Respondent stated he did not believe the legislature had considered situations like petitioner, who "constantly does not appear in court no matter what Court order or what release you give her or what sanction that you give her, she doesn't come back to court."

¶ 14 After the denial of the motion, respondent advised petitioner of her appellate rights. Petitioner again informed the court that, for at least two of the warrants, she was in the hospital. However, petitioner again did not have any proof. Respondent stated that, while petitioner's hospitalization may have made a difference in one of the rulings, she still made no efforts to go to court after she was discharged. Respondent directed the State to contact the Attorney General to ensure a representative of that office appeared at the next court date to take a position on the constitutionality of the statute.

¶ 15 On December 18, 2024, petitioner filed a notice of appeal from pretrial detention or release order pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024). On December 27, 2024, petitioner filed a motion for leave to file a complaint for *habeas corpus* or, alternatively, a writ of *mandamus* or prohibition or a motion for a supervisory order, seeking her immediate release from custody. This court granted petitioner leave to file her complaint on January 10, 2025, and the case was docketed as Stewart v. Rosenblum, No. 131365.

¶ 16 On January 6, 2025, while this case was pending before this court, respondent held a hearing to supplement the record and ensure he had complied with Illinois Supreme Court Rules 18 and 19 (eff. Sept. 1, 2006). Respondent informed the parties he believed he retained jurisdiction over the case because petitioner had filed the appeal improperly in the appellate court instead of this court. Respondent reasoned that, since the appeal was based on his finding that the Act was unconstitutional, it should have been filed in this court. Respondent clarified that he had tasked the Cook County State's Attorney's Office with notifying the Attorney General's Office about his findings. He also notified the Administrative Office of the Illinois Courts to ensure the appointment of the Attorney General in the case. Respondent also found that, although he did not cite the exact statutory provisions he found unconstitutional, "it was very clear by my ruling what I was saying and what part of the statutes were unconstitutional." Nevertheless, respondent clarified that he found sections 110-6 and 110-6.1 unconstitutional as applied to petitioner because it did not allow the circuit court to detain a defendant outside the sanctions provisions or unless the State files a petition to revoke pretrial release. Respondent found the 30-day sanction period for detention was "inappropriate at that time."

¶ 17    Respondent also clarified that he found section 110-6 unconstitutional because it only allowed revocation of pretrial release following a petition to revoke from the State and did not allow the court to act *sua sponte* to detain a defendant under section 110-6.1(a)(8) (725 ILCS 5/110-6.1(a)(8) (West 2024)), when the defendant willfully failed to appear in court. This limitation violated the separation of powers clause, as it left the circuit court no possibility of moving the case forward where defendant had repeatedly failed to appear. The statute, as applied to petitioner's case, "did not protect the Court's interest and the Judicial Branch's interest in obtaining justice, moving a case forward, managing the call." Respondent added that he had "issues with that constitutionality of [the Act] as a whole" and gave other examples of how the statute was unconstitutional. As a result, respondent held he could not preserve the validity of the statute.

¶ 18    Following respondent's holding, the State asked for leave to file a petition to revoke petitioner's pretrial release. The State argued that it agreed with respondent's decision on November 7, 2025, that there was clear and convincing evidence that petitioner was a flight risk, which justified her detention under section 110-6.1(a)(8). The State argued that, under section 110-6.1(d)(2) (*id.* § 110-6.1(d)(2)), the State could file its petition to revoke based on the new evidence of petitioner's failure to appear after she was granted pretrial release. The State argued that it was not limited to the timing requirement under section 110-6.1(c) (*id.* § 110-6.1(c)) because, under section 110-6(i) (*id.* § 110-6(i)), "[n]othing in [section 110-6] shall be construed to limit the State's ability to file a verified petition seeking denial of pretrial release under subsection (a) of Section 110-6.1 or subdivision (d)(2) of Section 110-6.1." According to the State, it could file a petition to detain under section 110-6.1(d)(2) anytime there was new evidence. Therefore, the State argued, there was a basis and mechanism through which respondent could detain petitioner without finding the statute unconstitutional. The defense objected to the State's position because there was no new information justifying the petition to revoke pretrial release that the State did not have at the time it filed the petition for sanctions. The defense argued the State only had 21 days from the time it learned of the new evidence to file a petition to revoke.

¶ 19    Respondent noted that, even under the State's new argument for its petition to revoke, respondent could not act *sua sponte* and needed a petition from the State. Respondent found this was still a violation of the separation of powers clause

because he could not "administer justice without the permission of the Executive Branch." Respondent granted the State leave to file its petition to revoke but deferred ruling on the petition until a special attorney general could be appointed, as respondent "had no representation in this at this point" and there was "nobody [t]here for this Court." Respondent also noted he needed more time to examine and consider the new arguments the parties made at the hearing. Respondent postponed a hearing on the State's petition, as he wanted the Administrative Office of the Illinois Courts to appoint counsel to represent his interests because neither the State nor the defense took respondent's position.

¶ 20        On January 21, 2025, petitioner filed a motion for direct appeal to this court. See Ill. S. Ct. R. 302(b) (eff. Oct. 4, 2011) ("After the filing of the notice of appeal to the Appellate Court in a case in which the public interest requires prompt adjudication by the Supreme Court, the Supreme Court or a justice thereof may order that the appeal be taken directly to it."). Petitioner also argued that the appeal lay with this court under Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013). Petitioner asked this court to transfer her pending Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024) appeal to this court. On January 27, 2025, this court denied the motion.

¶ 21        On January 23, 2025, while petitioner pursued appellate relief, respondent held a hearing on the State's petition to revoke pretrial release and denied the petition. Petitioner's trial counsel submitted *People v. Farris*, 2024 IL App (5th) 240745, ¶ 46, an opinion from the appellate court that held that a subsequent petition to deny pretrial release pursuant to section 110-6.1(d)(2) cannot be based on subsequent noncriminal violations of pretrial release. The court heard arguments from both parties and denied the State's petition, based in part on the holding in *Farris*.

¶ 22        On January 28, 2025, the State filed a motion in the appellate court to transfer petitioner's appeal to this court under Illinois Supreme Court Rule 365 (eff. July 1, 2017), which governs the transfer of appeals from one court to another if the appeal was filed in the wrong court. The State argued that petitioner's Rule 604 appeal should have been filed in this court because the order from which petitioner appealed held the Act was unconstitutional. See Ill. S. Ct. R. 302(a) (eff. Oct. 4, 2011); R. 603 (eff. Feb. 6, 2017). Petitioner opposed the State's motion because it had sought similar relief and this court denied her motion to transfer the case.

However, petitioner noted that "[i]t may be that counsel's [Rule] 302(b) motion in the Supreme Court was not the correct mechanism and the State's transfer motion in this Court is the proper way to transfer a case. Or it may be that the correct venue is this Court." On February 6, 2025, the appellate court granted the State's motion, and the case was transferred to this court. This court docketed the appeal as People v. Stewart, No. 131506. On February 18, 2025, this court granted an agreed motion by petitioner to consolidate the cases. On May 21, 2025, after the case was fully briefed and this court heard oral argument, we ordered petitioner's immediate release from custody.

## II. ANALYSIS

Respondent does not contest that he lacked the statutory authority to detain petitioner indefinitely pending trial. Therefore, the main question before us is whether sections 110-6 and 110-6.1 of the Act curtailed what respondent referred to as his inherent authority to administer justice, control his docket, and manage the proceedings and thus violated the separation of powers clause of our constitution (Ill. Const. 1970, art. II, § 1). In answering this question, we must adhere to our duty to construe statutes in a manner that upholds the statute's validity and constitutionality when it is reasonably possible to do so. *People v. Thompson*, 2025 IL 129965, ¶ 13. Additionally, we must ascertain and give effect to the intent of the legislature, considering the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Oswald v. Hamer*, 2018 IL 122203, ¶ 10.

Before we address this main issue, we note that Illinois Supreme Court Rule 381(c) (eff. July 1, 2017) provides, "[i]n an original action to review a judge's judicial act the judge is a nominal party, only, in the proceeding, and need not respond to the motion or complaint unless instructed to do so by the court. The judge's failure to do so will not admit any allegation." Similarly, under Illinois Supreme Court Rule 383(c) (eff. July 1, 2017), "[a] person whose act is the subject of [a motion for supervisory order] shall be designated as a respondent. A respondent need not respond to the motion unless instructed to do so by the court, and failure to respond will not admit any of the allegations contained in the motion." In this case, we did not instruct respondent to file a response to the petition;

however, we accepted respondent's briefs and participation in this litigation. In addition, because the State did not support respondent's position, we find it appropriate to consider respondent's argument. However, we note that, under Rules 381 and 383, a judge's participation in an action covered by these rules should be at this court's behest.

¶ 26                              A. Standard of Review

¶ 27      Because this is an original action in this court and the issues presented here regarding respondent's authority to detain petitioner are questions of law, our review is *de novo*. Ill. S. Ct. R. 381(a) (eff. July 1, 2017) (only issues of law are considered in original actions in cases relating to *habeas corpus*); *People v. Devenny*, 199 Ill. 2d 398, 400 (2002) ("Whether a statute is constitutional is a question of law that we review *de novo*."); *McElwain v. Office of the Illinois Secretary of State*, 2015 IL 117170, ¶ 11 (reviewing *de novo* a circuit court order declaring a statute unconstitutional as applied).

¶ 28             B. The Act and the Circuit Court's Authority to Detain

¶ 29      Through the Act, the legislature expressed a clear intent that "[a]ll defendants shall be presumed eligible for pretrial release," unless the State can show by clear and convincing evidence that certain statutory provisions are met to authorize detention. 725 ILCS 5/110-6.1(e) (West 2024). Under section 110-6.1(a), the circuit court may deny a defendant pretrial release only if the defendant is charged with certain offenses and his or her pretrial release poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case. *Id.* § 110-6.1(a)(1)-(7). Pretrial release can also be denied to a person who has a high likelihood of willful flight to avoid prosecution and is charged with certain felony offenses. *Id.* § 110-6.1(a)(8). Detention proceedings under section 110-6.1 are initiated by the filing of a verified petition by the State. *Id.* § 110-6.1(a).

¶ 30      Here, petitioner was charged with a Class 2 felony of possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1), (b) (West 2024)), which is not a detainable offense under section 110-6.1(a). She was presumed eligible for pretrial release

unless the State filed a petition to detain and proved by clear and convincing evidence that petitioner had "a high likelihood of willful flight to avoid prosecution." 725 ILCS 5/110-6.1(a)(8), (e) (West 2024). In this case, the State did not file a timely petition to detain, and petitioner was released pending trial. Thereafter, respondent could only revoke petitioner's pretrial release if she was charged with a new qualifying offense while on pretrial release. *Id.* § 110-6(a). Under that section, pretrial release may be revoked "after a hearing on the court's own motion or upon the filing of a verified petition by the State." *Id.*

¶ 31     When petitioner repeatedly failed to appear in court following her release, the State filed a petition for sanctions, utilizing an avenue provided by the legislature to address a defendant's failure to abide by the terms of pretrial release. *Id.* § 110-6(e), (f). Upon the filing of the State's petition, respondent had the discretion to detain petitioner "for a period not exceeding 30 days." *Id.* § 110-6(f)(2). However, respondent explained that he would not "just assess a sanction because [he] believe[d] assessing a sanction under these circumstances d[id] not allow the court to do [its] job, which [wa]s to move the case and to get something going on it." Respondent went further and *sua sponte*, without prior notice to petitioner, recharacterized the State's petition for sanctions as a petition to revoke pretrial release. Respondent's order to detain petitioner under these circumstances was improper because the plain language of the Act did not permit petitioner's detention beyond the 30-day sanctions period. We need not dwell long on this issue because the parties agree that, at the time respondent ordered petitioner's detention on November 7, 2024, there was no statutory authority for her indefinite detention pending trial. We join in this agreement, as it is clear respondent's actions were not in accord with the plain language of sections 110-6 and 110-6.1.

¶ 32                           C. Facial Versus As-Applied Invalidity

¶ 33     Respondent argues that, even though he lacked the statutory authority to act as he did, he nevertheless had the inherent judicial authority to deny pretrial release in order to manage his docket and achieve an orderly and expeditious disposition of petitioner's case. Because respondent found the Act clashed with this inherent judicial authority, respondent argues he properly found the Act to be unconstitutional. Respondent indicated he was making an as-applied finding that

- 12 -

the sections of the Act that limited his ability to detain petitioner were unconstitutional. Petitioner argues respondent made statements implying his ruling was broader than that, *i.e.*, that the statute was facially unconstitutional. In his brief before this court, respondent argues that his findings were limited to the facts of this case.

¶ 34    In our recent decision in *Rowe v. Raoul*, 2023 IL 129248, ¶¶ 43-48, this court reviewed a finding that the pretrial release provisions of the Act violated the separation of powers clause and concluded the Act was facially constitutional. Therefore, respondent was bound to follow that holding and could not properly declare the Act facially unconstitutional. See *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 61 ("Under the doctrine of *stare decisis*, when this court has declared the law on any point, *it alone can overrule and modify its previous opinion*, and the lower judicial tribunals are bound by such decision and it is the duty of such lower tribunals to follow such decision in similar cases." (Emphasis in original and internal quotation marks omitted.)).

¶ 35    While we recognize some of respondent's statements appear to have been broader than necessary for an as-applied finding, respondent has maintained that his finding was limited to the facts of petitioner's case. We will therefore review respondent's finding that sections 110-6 and 110-6.1 violated the constitution as applied to the facts of this case. "Although facial and as-applied constitutional challenges are both intended to address constitutional infirmities, they are not interchangeable." *People v. Thompson*, 2015 IL 118151, ¶ 36. An as-applied constitutional challenge is dependent on the particular circumstances and facts of the individual defendant or petitioner. *Id.* ¶ 37. "Therefore, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." *Id.* In a typical case involving an as-applied constitutional challenge to a statutory provision, the party challenging the constitutionality of the statute bears the burden of proving that the statute is unconstitutional as applied to the facts of his case.

¶ 36    Here, the facts necessary for respondent to find the statute unconstitutional as applied to petitioner were not developed before respondent made his ruling. The problem with the lack of an evidentiary hearing is highlighted by respondent's speculative argument that the Act's 30-day detention as a sanction for petitioner's

failure to appear was insufficient to guarantee her future appearance in court. Respondent did not hold an evidentiary hearing where evidence could have been presented showing the circumstances of petitioner's failure to appear as well as whether the sanction provisions or modified conditions of pretrial release would ensure her future appearance in court. As a result, respondent's as-applied finding was premature. See *People v. Minnis*, 2016 IL 119563, ¶ 19 ("Without an evidentiary record, any finding that a statute is unconstitutional 'as applied' is premature, and the constitutional challenge must be facial.").

¶ 37        Respondent contends that he gave petitioner a chance to provide evidence in support of her claim that at least some of her absences were because she was hospitalized and she failed to present any such evidence. Respondent thus argues that petitioner cannot claim there was insufficient evidence of her willful flight. Respondent's contention fails because the court was required to hold the evidentiary hearing and consider the missing evidence *before* finding that the Act was unconstitutional as applied to petitioner. Asking for evidence after the decision through a motion to reconsider was not a substitute for the proper procedure.

¶ 38        Respondent's finding that the Act was unconstitutional was also incorrect because it was based on an expansive interpretation of the inherent judicial authority recognized in *People ex rel. Hemingway v. Elrod*, 60 Ill. 2d 74 (1975). This court recently rejected this broad understanding of judicial authority in *Rowe*. See *Rowe*, 2023 IL 129248, ¶ 45 (rejecting the trial court's "overreading of *Hemingway*"). In *Hemingway*, the court allowed a petitioner to file a petition for a writ of *habeas corpus* after he was charged with murder and denied bail. *Hemingway*, 60 Ill. 2d at 76. The sole issue before the court was whether the petitioner was entitled to bail as a matter of right under the bail clause of our constitution. *Id.* In reviewing petitioner's claim, this court opined that "the constitutional right to bail must be qualified by the authority of the courts, as an incident of their power to manage the conduct of proceedings before them, to deny or revoke bail when such action is appropriate to preserve the orderly process of criminal procedure." *Id.* at 79. This court also found a court could deny bail if it was satisfied by the proof that a defendant would not appear for trial regardless of the amount or conditions of bail. *Id.* at 80. *Hemingway* referred to the court's power to deny or revoke bail under such circumstances as "inherent." *Id.*

¶ 39    In *Rowe*, this court first noted that *Hemingway* "decided the very narrow question of whether a trial court has the inherent authority to deny pretrial release." *Rowe*, 2023 IL 129248, ¶ 47. *Rowe* acknowledged that, under *Hemingway*, courts have " 'the inherent power' " to deny bail when a defendant may interfere with witnesses or may not appear for trial. *Id.* ¶ 46 (quoting *Hemingway*, 60 Ill. 2d at 80). However, the *Rowe* court noted that the *Hemingway* court "reviewed the American Bar Association's Standards Relating to Pretrial Release and linked them to provisions in article 110 of the Code that provide conditions for admitting a defendant to bail" as part of its analysis. *Id.* ¶ 47. *Rowe* concluded that, "[i]f we believed that bail was exclusively a matter for the judiciary, we would not have quoted those statutory provisions." *Id.* This court recognized that the legislature had long regulated the bail system and that it could do so again in enacting the Act without offending separation of powers principles. *Id.* ¶ 48. *Rowe* provided an example of another area where the legislature enacts statutes that impact a circuit court's authority, stating, "this court has held that sentencing is exclusively a judicial function [citation] but has also held that the legislature may restrict the exercise of judicial discretion in sentencing, such as by providing for mandatory sentences." (Internal quotation marks omitted.) *Id.* ¶ 49.

¶ 40    Respondent argues that *Rowe* is inapplicable because it involved a facial challenge to the Act. However, we find the reasoning in *Rowe* to be instructive. By enacting the Act the legislature could properly limit judicial discretion in the pretrial detention context without offending any inherent judicial authority the court may have to deny or revoke bail. The court's judicial authority must be construed in tandem with the legislature's long-recognized authority to regulate the pretrial release system. To allow a court to circumvent the Act as an exercise of its inherent authority to detain a defendant indefinitely pretrial would render the Act optional, which would be contrary to the legislative intent.

¶ 41    This court has long recognized that the goal of the separation of powers doctrine is

"to ensure the whole power of two or more branches of government shall not reside in the same hands. [Citation.] But the doctrine is not intended to achieve a complete divorce among the three branches of government and does not

- 15 -

require governmental powers to be divided into rigid, mutually exclusive compartments." *People v. Mayfield*, 2023 IL 128092, ¶ 26.

The separation of powers doctrine is not violated simply because separate branches of government exercise authority in an overlapping manner. *Id.* The legislature may enact laws involving judicial practice if they do not infringe unduly upon the judiciary's inherent powers. *Murneigh v. Gainer*, 177 Ill. 2d 287, 303 (1997). The legislature also has the concurrent constitutional authority to enact statutes that complement our procedural rules facilitating the exercise of judicial power. See *People v. Walker*, 119 Ill. 2d 465, 475 (1988).

¶ 42 In this case, sections 110-6 and 110-6.1 did not violate the separation of powers doctrine because they did not *unduly* infringe on respondent's inherent authority to control his docket by limiting his ability to detain petitioner pending trial. Under section 110-6, respondent could *sua sponte* hold a hearing to determine whether petitioner's pretrial release should have been revoked once she was charged with an offense while on pretrial release. Once the charges were dropped, respondent had the opportunity and discretion to impose a range of sanctions for petitioner's failure to appear, which included a 30-day period of detention and a modification of petitioner's pretrial conditions. Respondent argues that these sanctions would not have been enough to ensure petitioner came to court. However, as noted above, this argument is speculative where respondent did not attempt to impose the sanctions or receive evidence at a hearing that such sanctions would be inadequate before declaring the statute unconstitutional.

¶ 43 The Act also did not restrict the court's ability to proceed with trial if petitioner failed to return to court after a 30-day detention period because the Act did not contravene the trial *in absentia* statute. 725 ILCS 5/115-4.1(a) (West 2024). Pursuant to that statute, the trial court could have proceeded with the trial in petitioner's absence. *Id.* ("When a defendant after arrest and an initial court appearance for a non-capital felony or a misdemeanor, fails to appear for trial, at the request of the State and after the State has affirmatively proven through substantial evidence that the defendant is willfully avoiding trial, the court may commence trial in the absence of the defendant."). Respondent is correct when he notes that trials *in absentia* are generally disfavored. See *People v. Smith*, 188 Ill. 2d 335, 340 (1999). However, trials *in absentia* are permitted when a defendant

voluntarily absents himself from his trial because to allow a defendant to stop trial proceedings by his or her voluntary absence would allow a defendant to profit from his or her own misconduct. *Id.* at 341.

¶ 44    Respondent's ability to continue with trial proceedings if petitioner failed to appear in court is why respondent's reliance on *People v. Flores*, 104 Ill. 2d 40 (1984), is misplaced. In *Flores*, after the first day of trial, the defendant failed to return to court for the rest of the trial. *Id.* at 43. A part of the trial *in absentia* statute provided that, "[i]n any criminal trial, where a defendant after his trial commences willfully absents himself from court for a period of 2 successive court days, the court *shall* proceed with trial." (Emphasis in original and internal quotation marks omitted.) *Id.* at 46. The trial court declared this provision " 'an unconstitutional intrusion of the legislature into the trial authority and rulemaking authority of the courts.' " *Id.* at 44. On appeal, this court interpreted the "shall" in the statute as permissive because if the statute were mandatory, it unduly infringed upon the inherent authority of the judiciary. *Id.* at 48. This court held that a mandatory reading of the statute would be unconstitutional because "to allow the legislature to mandate how long a trial judge must wait before proceeding with a trial, when a defendant has willfully absented himself from his trial once it has commenced, unconstitutionally infringes upon a trial judge's authority to control his docket." *Id.* at 49. This was because the trial judge could not know in advance when a defendant would be absent from trial and plan accordingly. *Id.* at 50. *Flores* is distinguishable because, although the sections of the Act at issue here are mandatory, nothing in the Act prohibited respondent from moving the case along even if petitioner failed to appear in court. Indeed, the court had admonished petitioner that this was a possibility.

¶ 45    For the foregoing reasons, we reverse respondent's judgment that held sections 110-6 and 110-6.1 unconstitutional as applied to petitioner's case.

¶ 46                                    D. Relief

¶ 47    Having found respondent lacked the authority to detain petitioner and that sections 110-6 and 110-6.1 are constitutional, we turn to the secondary question of the type of relief petitioner should receive. As explained below, on May 21, 2025,

we concluded the appropriate avenue for petitioner's relief was to grant her petition for *habeas corpus* and thus ordered her release from custody.

¶ 48   This court is authorized by the 1970 Illinois Constitution to exercise original jurisdiction in cases relating to *habeas corpus* (Ill. Const. 1970, art. VI, § 4(a)). *Barney v. Prisoner Review Board*, 184 Ill. 2d 428, 430 (1998). An order of *habeas corpus* will issue only when "a petition is presented which is in substantial accord and compliance with the provisions of the statute, and which shows upon its face that the petitioner is entitled to his discharge." (Internal quotation marks omitted.) *Beacham v. Walker*, 231 Ill. 2d 51, 59 (2008). "Under *habeas corpus*, the sole remedy is a prisoner's immediate discharge from custody." *Guzzo v. Snyder*, 326 Ill. App. 3d 1058, 1064 (2001).

¶ 49   *Habeas corpus* provides relief only on the grounds specified in section 10-124 of the Code of Civil Procedure (735 ILCS 5/10-124 (West 2024)). *Barney*, 184 Ill. 2d at 430. Under section 10-124,

"If it appears that the prisoner is in custody by virtue of process from any court legally constituted, he or she may be discharged only for one or more of the following causes:

1. Where the court has exceeded the limit of its jurisdiction, either as to the matter, place, sum or person.

2. Where, though the original imprisonment was lawful, nevertheless, by some act, omission or event which has subsequently taken place, the party has become entitled to be discharged.

3. Where the process is defective in some substantial form required by law.

4. Where the process, though in proper form, has been issued in a case or under circumstances where the law does not allow process to issue or orders to be entered for imprisonment or arrest.

5. Where, although in proper form, the process has been issued in a case or under circumstances unauthorized to issue or execute the same, or where

- 18 -

the person having the custody of the prisoner under such process is not the person empowered by law to detain him or her.

6. Where the process appears to have been obtained by false pretense or bribery.

7. Where there is no general law, nor any judgment or order of a court to authorize the process if in a civil action, nor any conviction if in a criminal proceeding. No court, on the return of a habeas corpus, shall, in any other matter, inquire into the legality or justice of a judgment of a court legally constituted." 735 ILCS 5/10-124 (West 2024).

¶ 50     Petitioner argues that she is entitled to discharge because, although her initial arrest was lawful, respondent exceeded his authority to detain her indefinitely in response to the State's petition for sanctions. We agree with petitioner.

¶ 51     We have previously recognized that

"[i]t is well established that a writ of *habeas corpus* is available only to obtain the release of a prisoner who has been incarcerated under a judgment of a court which lacked jurisdiction of the subject matter or the person of the petitioner, or where there has been some occurrence subsequent to the prisoner's conviction which entitled him to release." *Barney*, 184 Ill. 2d at 430.

A petition for a writ of *habeas corpus* may not be used to review proceedings that do not exhibit one of these defects, even though the alleged error involves a denial of constitutional rights. *Id.*

¶ 52     Although our prior case law has referred to changes that take place after conviction, in situations such as this case, where petitioner is improperly detained before her conviction, the proper approach would be to determine whether there was a change that took place after her detainment that entitled her to release. This is appropriate because neither our constitution nor section 10-124 limits petitions for *habeas corpus* relief to petitioners who are incarcerated following a conviction. See 735 ILCS 5/10-102 (West 2024) ("Every person imprisoned or otherwise restrained of his or her liberty, except as herein otherwise provided, may apply for habeas corpus in the manner provided in Article X of this Act, to obtain relief from such imprisonment or restraint, if it proved to be unlawful.").

¶ 53                        III. CONCLUSION

¶ 54        Here, petitioner was initially detained based on the warrant issued when she failed to appear in court. This detention was proper, but her continued detention after the November 7, 2024, hearing was not. The change in circumstances that led to petitioner's improper detention was respondent's unprompted declaration, with no challenge from either party, that the Act was unconstitutional. Therefore, for the foregoing reasons, on May 21, 2025, we granted petitioner relief and granted her writ of *habeas corpus* ordering the circuit court of Cook County to release her immediately.

¶ 55        Circuit court judgment reversed.

¶ 56        Cause remanded.